Margaret McCLAIN and Charles J. McCLAIN
*v.* Wilbur M. GILES

CA 80-227                                     607 S.W. 2d 416

Court of Appeals of Arkansas
Opinion delivered November 19, 1980

*Arnold, Arnold, Lavender & Rochelle*, for appellants.

*Wright, Lindsey & Jennings*, for appellee.

JAMES H. PILKINTON, Judge. This appeal is by plaintiffs below from the findings and judgment of the circuit court denying damages to them for alleged medical malpractice and negligence.

Margaret and Charles McClain, husband and wife, brought this case against Dr. Wilbur A. Giles of Little Rock alleging that appellee, as surgeon, has used a surgical knife for a purpose that was not proper, and that Dr. Giles had used excessive force in the use of the knife in lumbo-sacral

disc surgery which he performed on the left side of Margaret McClain's spine. It was specifically alleged that such acts constituted negligence and caused the knife blade to break inside her spine. It was also alleged that the broken part of the blade was left in the patient's spine at the conclusion of the surgery, and that all of these acts resulted in damages to appellants. The Baptist Medical Center System, where the surgery was performed, and the manufacturer of the blade in question, Becton, Dickinson and Company (Bard-Parker Division) were also made parties defendant; however, appellant voluntarily dismissed their claims against those entities after pre-trial discovery revealed that the blade manufactured by the firm, and supplied for use in the operating room by the Baptist Medical Center System, was not defective in any respect.

After November 22, 1974, the date of the surgery in which the blade was broken, the fragment of the broken blade migrated out of the spinal interspace in which it been left and was surgically removed from Mrs. McClain's back in a second operation performed by Dr. Giles on December 9, 1974.

Mrs. McClain later became symptomatic on the opposite side from where her original complaints arose, and she sought and obtained medical treatment from Dr. Casey Patterson, a neurosurgeon in Dallas, Texas. Dr. Patterson, on June 4, 1975, performed disc surgery on Mrs. McClain at the same space, but on the opposite side — the right. Dr. Giles had operated on the left side. Mrs. McClain claims that for a short period of time after June 4, 1975, she was asymptomatic but again developed lower back and lower extremity pain, which remained through the trial.

A jury being waived, the trial court found that Dr. Giles was not negligent in the manner in which he used the knife in question and that he had not used the knife for an improper purpose.

Appellants complain on appeal that the circuit court erred in (1) not making specific findings of fact and con-

clusions of law; and, (2) the findings in the judgment are clearly against the preponderance of the evidence. After determining as a matter of fact that the plaintiffs had failed to prove by a preponderance of the evidence that Dr. Giles was negligent in any manner, the court further found as conclusions of law that the issues of proximate cause and damages were moot; and judgment was entered in favor of the defendant.

Appellant correctly points out that the trial court, upon timely request, under the provisions of Rule 52(a) of the Arkansas Rules of Civil Procedure is required to make specific findings of fact and conclusions of law and to file the same with the clerk of the trial court so that such findings may be made part of the record.[1] In the case before us, the request was not timely. Such motion was filed on October 25, 1979, after a decision letter had been written on October 3, 1979. Appellants' motion to amend the findings was likewise untimely in that it was filed more than ten days after the entry of the judgment. See Rule 52(b). This subsection is not mandatory, even if a request is filed within the ten-day period. We suspect that part of the problem here resulted from the fact that this case was tried on the 26th day of March, 1979, taken under advisement by the court, and not decided until December 20, 1979. Why this delay occurred is not clear from the record, but it was certainly undesirable procedure.

In the type of surgery performed on Mrs. McClain, the patient is placed face down on the operating table, and the patient's back is opened up. The most common procedure is to then remove a portion of the laminea or covering of the disc interspace over the nerve on the affected side. The bone is removed and the nerve is identified and lacerated medially. The ruptured disc material, which should be beneath the nerve, is then located. A pituitary rongeur is introduced down into the space and the fragments pulled from beneath the nerve. A pituitary rongeur is a long instrument that has an open mouth on the end. There are numerous types of mouths

---

[1] The Rule does not place a severe burden upon the trial judge, for he needs only to make brief, definite, pertinent findings and conclusions upon the contested matters.

that can be used. The most common one is a mouth that opens straight forward like jaws. Others have down-biting jaws and up-biting jaws which are used to seize and remove disc material from the interspace after the fragments have been removed and the space opened.

There is a ligamentous covering over the disc space, and a No. 15 blade knife is often used to open this covering so that the surgeon can get the other instruments down into the space. Dr. Giles testified that he cut through the ligamentous structure with the knife blade. He described some of the disc material as being tough like crab meat, and with age and degeneration it becomes more fibrous and forms hard scar-ring material within the cartilage structure. He said it was this type of material that he was excising at the time the blade broke.

The operation in question had progressed routinely until the incident involving the broken blade. Dr. Giles describes the occurrence as follows:

> Toward the end of this operative procedure, after I had proceeded with decompression of the space to my satisfaction, I again explored the nerve both above and below, up above the space and below the space to make sure that there were no other fragments out that had not been identified. I then retracted the nerve root as far medially as I could. I felt that there was still possibly some disc material in the mid-line area. I then took the No. 15 blade knife once again and introduced it through the ligamentous covering which is in the mid-line area, down into the interspace once again and drew it across the interspace. When I withdrew it from the interspace I realized that the tip of the blade was ruptured and broken off.

Dr. Giles testified that he put the pituitary rongeur back down into the space and felt around gently but could not feel the tip of the knife blade. He then had an x-ray machine brought into the operating room to determine the position of the broken blade. After reviewing the x-ray that had been made, he found that the tip of the blade was lodged deep

within the interspace and more over to the patient's right side. He further said:

> In attempting to probe for the broken blade I used a long, straight curette, which is a long instrument that we curette material off with, to try to feel with it. I could not feel the blade with it, so I then took the straight-mouthed pituitary rongeur which is also long and used to retract the fragments with. I felt around with it and could not feel in any form metal on metal. I introduced those two instruments as far down into the interspace as I could and felt around without putting any pressure in any form. I did not retrieve the blade.

After the broken tip of the knife blade could not be retrieved, Dr. Giles called in one of his senior associates, Dr. Adametz, who agreed with Dr. Giles that he did not think it would present a problem to the patient based on what Dr. Adametz had been told. It was decided to leave the fragment in the back rather than risk damage to the nerve, or incur other risks involved, by further probing. The patient said she was not advised of the situation, but this was disputed by appellee. Dr. Giles also said he told Mr. McClain the next day about the incident and the fact that the fragment was still in Mrs. McClain's back.

Dr. Giles testified that he was not applying pressure to the knife at the time it broke but simply placed the blade in the interspace, attempting to draw it across the ligament laterally in a cutting fashion. He further testified that the procedure he followed in the surgery on Mrs. McClain did not deviate in any way from proper standards and was done according to good medical practices. Dr. Giles expressly denied that any misuse of the knife was a factor in causing it to break. Dr. Casey Patterson of Dallas, Texas, testified by deposition that, based on the history of the case, in his opinion Dr. Giles' activities in declining to probe further for the lost blade, and leaving it in the cavity, were according to good medical practices. Such testimony, in a case of this nature, is not conclusive evidence that Dr. Giles was not negligent. It was the court's function in this case, as fact finder, to determine whether Dr. Giles' acts constituted negligence. In the

case before us, the proper purpose of the knife in question, and the standard of care required in using a surgical knife of the type involved in this operation were not contradicted. Only the facts concerning *how* Dr. Giles used the knife were in question. Thus, the court here, sitting as a jury, was free to accept or reject any of Dr. Giles' assertions that the alleged negligent acts did not occur.

We agree that the testimony and circumstances in this case, as shown by the record, are sufficient to establish an issue of fact on the question of negligence. *Graham* v. *State*, 248 Ark. 6, 449 S.W. 2d 949 (1970). However, it must be remembered that this case was not disposed of when the plaintiffs rested, but was tried to a conclusion. Only then did the trial court accept the defendant's version and find that the surgeon was not negligent. The fact finder thus resolved the disputed issue of negligence against the appellant, and we are not at liberty to review that finding de novo.

This case was tried before July 1, 1979, the effective date of Rule 52, Arkansas Rules of Civil Procedure, but was not decided by the trial judge until after the rules became effective. Regardless of the test applied on appeal. this case must be affirmed. There is substantial evidence to support the court's findings, if the old test applies. *Taylor* v. *Richardson Construction Company*, 266 Ark. 447, 585 S.W. 2d 934 (1979). And, if the new rule applies, we are unable to say on this record that the court's finding of no negligence is clearly erroneous (clearly against the preponderance of the evidence). Rule 52, *supra*.

It must be remembered that appellant as plaintiff below had the burden of proof to show by a preponderance of the evidence that Dr. Giles was negligent. The trier of facts found against appellant on this crucial fact question and, under the circumstances, we must affirm.

WRIGHT, C.J., dissents.

ERNIE E. WRIGHT, Chief Judge, dissenting. I respectfully dissent from the majority opinion. In my view the trial court clearly erred in finding appellant failed to prove by a

preponderance of the evidence that appellee was negligent in the manner in which he used the surgical knife.

The undisputed proof shows the thin bladed knife No. 15 is suitable only for excising skin or soft tissue. Appellee admitted he used the knife to excise ligamentous covering and disc material down deep within the vertebral interspace, that the disc material is tough and looks like crab meat, that in the case of a person with a degenerative disc, as was the case here, the disc material can become more fibrous, and it was while appellee was excising such material that the knife blade broke off. The knife blade was left within Mrs. McClain's body, and thereafter caused her great pain, was a hazard to her health and a second operation was required for the removal of the knife blade.

There is undisputed expert testimony that the blade of the type of knife used by the appellee would only stand about one-half pound of lateral load applied to the handle. There was further expert testimony that the blade failed due to a lateral load applied to the handle.

In my view the appellee knew or should have known that the disposable thin bladed knife No. 15 he used for excising the degenerative disc material was not suitable for such purpose, and that the use of the knife for such purpose might well result in the blade breaking, as in fact it did.

I would reverse and remand the case for a determination of damages proximately caused by the actions of the appellee in causing the knife blade to break off and be left embedded in Mrs. McClain's spinal column.