Kent Andrew **FOLLETTE**, individually and as next friend of Andrew Stephenson Follette, a minor child; Jane Elizabeth Follette, individually and as next friend of Andrew Stephenson Follette, a minor child, Appellants,

v.

**WAL–MART STORES, INC.**, doing business as Sam's Wholesale Club, a division of Wal–Mart Stores, Inc., Appellees.

No. 94–1458.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 16, 1994.

Decided Dec. 6, 1994.

James A. Rasmussen, Wichita Falls, TX, argued, for appellants (Gary Southard, on the brief).

G. Luke Ashley, Dallas, TX, argued, for appellees (Frank Finn, Joseph Pevsner, Greg Curry, Beverly Burlinggame, and Karen Kendrick, on the brief).

Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN and BEAM, Circuit Judges.

RICHARD S. ARNOLD, Chief Judge.

The plaintiffs, Kent and Jane Follette, brought this breach of warranty suit on behalf of their minor son, Andrew. They now appeal the grant of a motion for summary judgment filed by the defendant, Wal–Mart. The District Court held that the Follettes' cause of action was barred by res judicata. Alternatively, that Court held that the suit was barred by the Arkansas statute of limita- tions. For the reasons set forth below, we reverse and remand the case for further proceedings.

I.

The Follettes allege that on August 21, 1989, a jug of hairspray purchased from Wal–Mart exploded, causing injuries to their minor son Andrew. Unfortunately for their case, they allowed the one-year Louisiana limitations period to run before pursuing their claims against Wal–Mart. Thus began the odd and complicated series of procedural events which culminate in the case before us.

The Follettes filed their original suit in the United States District Court for the Eastern District of Texas in order to avoid Louisiana's one-year limitations period. Wal–Mart moved to dismiss the suit based on a lack of jurisdiction over the person of the defendant. The Texas court denied this motion, holding that Wal–Mart had consented to the general jurisdiction of the Texas courts by virtue of its being licensed to do business in Texas. (It later became clear that this holding was erroneous according to Fifth Circuit law.) The Texas court then transferred the case, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Western District of Louisiana on the ground that it was a more convenient forum.

This transfer, combined with the erroneous ruling on personal jurisdiction, proved fatal to the Follettes' suit. Soon after the transfer, the United States Court of Appeals for the Fifth Circuit held that a foreign corporation does not consent to the general jurisdiction of a state merely by registering to do business in that state and appointing an agent for the service of process in that state. *Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179 (5th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1047, 122 L.Ed.2d 356 (1993). Subsequently, the Louisiana court granted Wal–Mart's motion for summary judgment, reasoning that, since the Texas court never had jurisdiction over the person of Wal– Mart, the Louisiana court was free to apply the Louisiana limitations period and dismiss the case. 829 F.Supp. 840 (W.D.La.), *aff'd without opinion,* 998 F.2d 1014 (5th Cir. 1993), *cert. denied,* — U.S. ——, 114 S.Ct.

1187, 127 L.Ed.2d 537 (1994). (Normally the law of the transferor forum follows a case transferred under Section 1404(a), but that is not true when the transferor court lacked jurisdiction.)

The Follettes then filed this suit on August 18, 1993, in the United States District Court for the Eastern District of Arkansas. For the first time, they allege a breach of the implied warranty of merchantability found in Article 2 of the Uniform Commercial Code (U.C.C.). They did not advance this theory in the previous case because Louisiana has not adopted Article 2. In order to recover damages for personal injury from a non-manufacturing seller in Louisiana, a plaintiff must prove negligence. *Jones v. Menard,* 559 F.2d 1282, 1284 (5th Cir.1977).

Citing the general rule against claim splitting, the Arkansas court held that the Follettes' warranty claim arose from the same transaction as the previously litigated tort claims, which were dismissed with prejudice in the Louisiana suit. Thus, the warranty claims should have been asserted along with the tort claims in the original suit. As a result, the Arkansas court held that res judicata prevents their assertion now.

Alternatively, the Arkansas court held that the Arkansas statute of limitations had expired before the Follettes filed their warranty suit. According to the court, breach-of-warranty actions which seek damages for personal injury are products-liability actions under Arkansas law. As such, they are subject to the three-year limitations period found in the Product Liability Act of 1979. Ark.Code Ann. § 16–116–103. This suit was filed nearly four years after the sale of the product and the injury occurred.

## II.

■ We first consider whether the Follettes' warranty claims were filed within the Arkansas limitations period. We give plenary review to a district court's determination of state law. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). The Follettes argue that the general four-year limitations period found in the UCC governs this case. Ark.

Code Ann. § 4–2–725. We hold that the three-year statute of limitations found in the Product Liability Act governs a breach-of-warranty suit when damages for personal injury are sought. Ark.Code Ann. § 16–116–103. The Product Liability Act is both more specific and more recent than Arkansas's adoption of the Uniform Commercial Code.

■ The Product Liability Act defines products-liability actions as "all actions brought for or on account of personal injury . . . caused by, or resulting from, the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, *marketing,* packaging, or labeling of any product. . . ." Ark.Code Ann. § 16–116–102(5) (emphasis added). Wal-Mart, as a seller of the product in this case, is "marketing" the product. *Webster's Third New International Dictionary* 1383 (1976). The Follettes' cause of action is for "personal injury" to their son "resulting from" that sale. Thus, it is a products-liability action under Arkansas Law. The Act then mandates that "all" products-liability actions "shall" be filed within three years of the injury. Ark.Code Ann. § 16–116–103. That three-year period, the Arkansas court correctly held, would normally govern this case. *Accord, Harris v. Standardized Sanitation Systems, Inc.,* 658 F.Supp. 438, 439 (W.D.Ark.1987); Joseph Heimann, Legislative Note, *The Arkansas Product Liability Act of 1979,* 35 Ark.L.Rev. 364, 368 (1981).

■ If the Follettes were suing on their own behalf, this holding would end the matter. This suit, however, was brought on behalf of the Follettes' minor son. They argue, therefore, that Arkansas's general savings statute prevents the running of the three-year limitations period. We agree.

The Arkansas savings statute provides that any minor entitled to bring an action may do so within three years after coming of age. See Ark.Code Ann. § 16–56–116. It applies to "any cause of action," *Graham v. Sisco,* 248 Ark. 6, 8, 449 S.W.2d 949, 950 (1970), unless "a statutory right of action is given, which did not exist at common law, and the statute giving the right also fixes the time within which the right may be enforced. . . ." *Anthony v. St. Louis, Iron*

*Mountain & Southern Railway Co.*, 108 Ark. 219, 221, 157 S.W. 394, 394 (1913). The savings statute applies to the case before us because an action for breach of the implied warranty of merchantability "exist[ed] at common law." *Id.;* see *Neel v. West–Winfree Tobacco Co.*, 142 Ark. 505, 508, 219 S.W. 326, 327 (1920) (finding common-law breach of implied warranty).

The Arkansas Supreme Court case of *Graham v. Sisco, supra,* is instructive. There, the parents of a minor allegedly injured by the malpractice of a doctor brought suit on behalf of the minor after the ordinary statute of limitations for malpractice actions had run. The Court found that the suit was timely because of the savings statute. This was so even though there was a specific limitations period for malpractice actions. See Ark.Stat. Ann. § 34–2616 (superseded by Ark.Code Ann §. 16–114–203). In a later opinion the same court explained that its holding in *Graham* was dictated by the fact that malpractice actions have their roots in the common law and "are not statutory in origin." *Sandusky v. First Electric Cooperative*, 266 Ark. 588, 591, 587 S.W.2d 37, 38 (1979).

Likewise, the Follettes are suing on behalf of their minor son. The theory they advance, breach of the implied warranty of merchantability, has its roots in the common law, though it has been changed by a statutory scheme, the U.C.C. Thus, the savings statute applies to prevent the limitations period from running.

## III.

■ We are left, then, to consider whether the prior Louisiana decision precludes the claim that the Follettes now assert. When a federal court is sitting in diversity, the preclusive effect of a prior judgment is determined by the preclusion rules of the forum which provided the substantive law underlying that prior judgment. *Hicks v. O'Meara*, 31 F.3d 744, 746 (8th Cir.1994). This rule applies when the original judgment is that of another federal court sitting in diversity. *Austin v. Super Valu Stores*, 31 F.3d 615, 617–18 (1994).[1] Thus, the question in this case is whether the Louisiana state courts would give preclusive effect to the original judgment. We conclude that they would not.

■ Louisiana's general rule of claim preclusion is virtually identical to that of the Restatement 2d of Judgments. All actions arising from the same "transaction or occurrence that is the subject matter" of a prior judgment are barred. La.Rev.Stat. § 13:4231. However, this rule does not apply "when exceptional circumstances" exist. La.Rev.Stat. § 13:4232A(1). This exception to the general rule "is necessary to allow the court to balance the principle of res judicata with the interests of justice." Comment on La.Rev.Stat. § 13:4232. The case before us involves one such "exceptional circumstance."

An examination of the Louisiana cases defining exceptional circumstances mandates the decision we reach today. For example, in *Jenkins v. State*, 615 So.2d 405 (La.App. 1993), the plaintiff was allowed to pursue his second suit in spite of a prior dismissal with prejudice for failure to prosecute. In reaching its decision, the Louisiana Court of Appeals noted that the plaintiff alleged "a horrendous injustice" (fraudulent conviction. of

---

1. Wal–Mart contends that our holding in *Austin* is in conflict with *Lane v. Peterson*, 899 F.2d 737 (8th Cir.), *cert. denied*, 498 U.S. 823, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990). Wal–Mart reads too much into *Peterson*. There, we never addressed the issue of whether state or federal law controlled. Rather, we applied general principles of res judicata. Additionally, we find it instructive that the same panel, a mere ten days later, in a connected case, specifically held that state collateral-estoppel rules should apply when a federal court is sitting in diversity. *Lane v. Sullivan*, 900 F.2d 1247, 1250 (8th Cir.), *cert. denied*, 498 U.S. 847, 111 S.Ct. 134, 112 L.Ed.2d 101 (1990). We reject Wal–Mart's argument that res judicata and collateral-estoppel are distinguishable for this purpose, that, while state law determines the collateral-estoppel effect of the judgment of a federal court in a case where state law supplied the rule of decision, federal law determines the res judicata effect of such a judgment. The two doctrines—res judicata and collateral estoppel—are simply two aspects of the law of former adjudication. It is impossible to distinguish them for present purposes. This Court has consistently looked to state law to determine the effect of the judgment of another federal court in a case where state law supplied the rule of decision. "Eighth Circuit decisions have consistently referred the question to state law." 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4472, at p. 550 (1994 Supp.).

murder and 30 years in prison) and that "his predicament is the result of his attorney's conduct and not his own." *Id.* at 406–07. In *Billiot v. Lebeouf Brothers Towing Co.*, 640 So.2d 826 (La.App.1994), the exceptional-circumstances clause was applied where the prior federal court action for violation of the Longshore and Harbor Workers' Compensation Act was dismissed with prejudice because one defendant was not the employer of the deceased worker and the other was immune from liability under that Act. In the opinion of the Louisiana Court of Appeals, the prior judgment should have been without prejudice because it was a mere procedural recognition of no right of action. The merits of the plaintiffs' claims had not been reached. Thus, the plaintiffs were allowed to pursue their Jones Act claims in a second suit. Otherwise, res judicata would forever bar the plaintiffs "from asserting their claims arising from the alleged wrongful death of their husband and father." *Id.* at 829. Such a result would be a "procedural windfall" to the defendant. *Id.*

Likewise, in the case before us, the Follettes find themselves in a bizarre predicament. The predicament in this case was caused by the error of a court. The correct course of action for the Texas federal court would have been either to dismiss the suit for want of personal jurisdiction, or to transfer the suit to another jurisdiction where personal jurisdiction and venue did exist, the Eastern District of Arkansas, for example. 28 U.S.C. §§ 1404(a), 1406(a); *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Turner v. McClain,* 459 F.Supp. 898, 901–02 (E.D.Ark.1978). In either event, the case could have gone forward in Arkansas, where it is not barred by limitations.[2] See also Ark.Code Ann. § 16–56–126 (providing an additional year in which to file suit following a dismissal without prejudice). This kind of unusual error by a court seems to us a more compelling reason for finding an

exceptional circumstance than does the attorney's error in *Jenkins.* In addition, just as in *Billiot,* the merits of the Follettes' case have never been addressed. Rather, the Louisiana court found that the suit was untimely. Finally, as in each of the cases discussed, the injury alleged is quite serious. The Follettes' minor son was burned over 80% of his body, causing great pain and disfigurement. If we were to allow res judicata to bar this suit, he would be forever barred from asserting his claims arising from those injuries. These factors, in our judgment, combine to create a truly exceptional circumstance. We do not believe that the law of Louisiana, which seems to us markedly forgiving in this respect, would countenance the barring of this claim because of the highly unusual interplay of transfer and jurisdictional doctrines that took place in this case.

### IV.

For the reasons stated above, we find that the Follettes' case is not barred by the Arkansas statute of limitations. Furthermore, exceptional circumstances exist precluding the application of res judicata in this case. Therefore, we reverse the judgment of the District Court and remand this case for further proceedings.

---

**2.** Wal–Mart also argues that the Follettes should have requested a re-transfer or sought a voluntary dismissal after Wal–Mart filed its motion for summary judgment in Louisiana. Any such action would have been futile. The Louisiana court made it clear that no re-transfer would be granted. A dismissal without prejudice was available only by order of the court because Wal–Mart had moved for summary judgment, Fed.R.Civ.P. 41(a)(2), and the Fifth Circuit has made it clear that avoiding a statute-of-limitations defense is the sort of "clear legal prejudice" which precludes a dismissal without prejudice by order of the court. *Phillips v. Illinois Central Gulf Railroad,* 874 F.2d 984, 987 (5th Cir.1989).