GRAY *v.* McDERMOTT.

4-3116

Opinion delivered October 9, 1933.

*John Sherrill,* for appellant.

*E. B. Dillon* and *Sam Robinson,* for appellee.

Johnson, C. J., (after stating the facts). At the conclusion of the testimony on behalf of appellees in the circuit court, appellant requested the court to direct the jury to return a verdict in her behalf. This peremptory instruction was refused by the trial judge, and we think reversible error was committed in so doing.

The law in this State in reference to the liability of a physician or surgeon in the prosecution of his professional services is well settled by this court and may be restated as follows:

A physician is required to possess and exercise the degree of skill and learning ordinarily possessed and exercised by members of his profession in good standing in the same neighborhood, and must use reasonable care

in the exercise of his skill and act on his best judgment. *Dunman* v. *Raney,* 118 Ark. 337, 176 S. W. 339.

In the instant case there are only two alleged grounds of negligence, namely, first, that appellant was negligent in failing to ascertain that the vein was severed by the bullet on August 24, 1930; second, that appellant was negligent in failing to ligate both ends of the vein in the operation on September 3. The first allegation of negligence is bottomed upon the fact that the doctors were negligent in failing to open up the wound to determine whether a vein or an artery had been severed by the bullet.

Appellee introduced no testimony on this point. Appellant introduced five or six physicians and surgeons who testified in the most positive terms that in their opinion it would be bad practice to go into a wound for the purpose of ascertaining whether a severance of a vein had taken place. All the physicians and surgeons who testified in the case agreed that this bullet wound was in a vital spot in the body, and any probing into the wound might cause a puncture of the axillary artery, axillary vein or the nerve controlling the arm, and that the severance of any or either of these would greatly endanger the life and chances of recovery of the patient. All the physicians further testified that the only purpose of entering the wound on August 24 would have been to stop the hemorrhage, and, since the hemorrhage had stopped prior to the visit of the doctors, it would have been an unreasonable procedure to have entered the wound. Furthermore, that the entrance to the wound at that time might carry therein an infection, and, since gunshot wounds frequently sterilize themselves, it was much better to await developments after giving antitoxin.

Furthermore, should a hemorrhage thereafter occur, it could later be discovered, either by the flow of blood or by a clot forming at or near the site of the injury and also from an examination of the pulse or his ability to manipulate his arm. Dr. Hoge, the only expert witness introduced on behalf of appellees, does not controvert this testimony. We conclude therefore that there was no testimony in support of appellee's allegation that ap-

pellant was negligent in failing to enter the wound on August 24, 1930, or subsequently.

On the second issue of negligence, namely, that appellant was negligent in failing to ligate both ends of the vein on September 3, the testimony is likewise uncontradicted. As we understand the record, all the expert witnesses testified and agreed that, where a vein is recently severed, both ends should be ligated, but there is no testimony in this record showing or tending to show that this procedure should be followed where a hole had sloughed off in the vein some days after the original injury, and which was not discovered until after sufficient internal bleeding had taken place to form two blood clots the size of a lemon. As we ascertain from the record, all the physicians agree that it would be the duty of the operating surgeon, under such circumstances, to tie off the bleeding end of the vein, and that it would not be his duty to tie off the end which was not bleeding. According to the physicians' testimony, this is so because after some length of time blood clots would necessarily form in the vein on the proximal end, and that to manipulate this end of the vein would very likely disturb the clot.

It is true Dr. Hoge testified that if a section of the axillary vein was taken out, both ends of the vein should be ligated, but this testimony in no wise conflicts with the testimony on behalf of appellant. No part of this vein was being removed. It was either severed by the bullet on August 24, 1930, or else sloughed off at some later date, thereby producing a hole in the vein and the hemorrhages which produced the blood clots. Therefore, since the uncontradicted testimony shows that this vein was severed at some date prior to September 3, 1930, and the operation on that date was made necessary by reason of such severance, it necessarily follows that the testimony of Dr. Hoge does not conflict with that of appellant's witnesses and made no issue for the jury to pass upon.

The question as to whether or not it was proper or improper for the physicians in charge to open up the wound or probe into it on August 24 or some subsequent

time thereto to determine whether or not a vein had been severed by the bullet; and also the question as to whether the physicians were negligent in failing to ligate both ends of the vein on September 3, when the operation was performed, were questions requiring scientific knowledge to determine. It cannot and should not be left to a jury to speculate whether or not the experts in the practice of their profession have pursued the proper course of procedure. *Davis* v. *Rodman*, 147 Ark. 385, 227 S. W. 612.

The uncontradicted testimony in this case shows that the deceased received from his attending physicians, including Dr. Gray, the degree of skill and learning ordinarily possessed and exercised by members of their profession in good standing in this neighborhood, and that they used reasonable care in the exercise of their skill while attending him after he was shot, and that they exercised their best judgment in administering their services. This is all that is required of physicians and surgeons in this State. It may be that some outstanding surgeon could have or would have done something for Mr. McDermott that was not done by these physicians, but this is purely speculative in so far as this record is concerned. Moreover, this is not the test to be applied in cases of this kind. Reasonable care, skill and learning is all that is required.

For the reasons aforesaid, there is no liability shown by the testimony, and the trial court erred in refusing to so direct the jury.

Since there is no testimony showing liability against the appellant and the cause of action seemingly having been fully developed, the cause of action is here dismissed.