Dr. Reuben L. CHRESTMAN, Jr. *v.*
Mrs. Mary KENDALL

5-5074                                    448 S. W. 2d 22

Opinion delivered December 15, 1969

*Wright, Lindsey & Jennings,* for appellant.

*David Solomon,* for appellee.

John A. Fogleman, Justice. Appellee recovered judgment for $30,000 upon a jury verdict against appellant in an action based on the alleged negligence of

appellant, a physician, in treating her and administering medication during an illness. Appellant relies upon three points for reversal. They are: failure to direct a verdict for appellant; error in admission into evidence of records of the Probate Court of Phillips County in a proceeding involving alleged incompetency of appellant; and error in the court's refusal to give AMI 1501 requested by appellant. We find reversible error in the last two points but not the first.

During the presentation of evidence in chief on behalf of appellee, the court, over the objections of appellant, admitted into evidence records of the Probate Court of Phillips County in a proceeding entitled "In the Matter of Dr. R. L. Chrestman, Jr., an Insane Person No. A-989." This record included the following:

1. Affidavit of Mrs. Grace S. Chrestman and R. L. Chrestman on a printed form alleging that appellant was, to the best of their belief, insane, and that he ought to be committed to an insane asylum for care and treatment, as his being at large was dangerous to the community, or prejudicial to his chances of recovering from present condition of mental disorder. This affidavit was dated February 27, 1967, the same day appellee was released from a hospital in which she had been treated under the supervision of Dr. Chrestman.

2. The answers of Dr. M. H. Oldham to interrogatories in said proceeding given on a form on which the questions were printed, and verified by oath on the date of the petition. In his answers Dr. Oldham stated that during the last two years appellant was progressively agitated, high-strung and easy to antagonize. In answer to an inquiry as to the first symptoms which caused suspicion of mental derangement, Dr. Oldham answered, "agitated, high-strung, bel-

ligerent—came to drink more and more for sedation." He described the more prominent manifestations as "split personality—schizophrenia —alcoholic." This doctor stated that appellant was considered of more than ordinary intelligence by his neighbors or acquaintances. He related that Dr. Chrestman had indulged in the use of intoxicating liquors to excess and that his appetite for tobacco, opium, morphine, laudanum or other drugs was questionable. He also stated that appellant had hallucinations of brain tumor, and had been checked by a neuro-surgeon but that he had no brain tumor or brain pathology.

3.  A similar affidavit by Dr. Charles P. McCarty, sworn to on the same date, was of the same tenor as that of Dr. Oldham.

4.  The order of the Probate Court entered on February 27, 1967, committing appellant to the custody of the Sheriff of Phillips County to be conveyed to the State Hospital for Nervous Diseases at Little Rock to be confined until discharged by due course of law. The order was based upon the depositions of the two physicians from which the court made a finding that appellant was insane as stated in the affidavit of Grace S. and R. L. Chrestman.

5.  The report of the Superintendent of the Arkansas State Hospital in conformance with Act 495 of 1965 made to the Probate Judge on March 10, 1967, stating that appellant was discharged as without psychosis and that his condition was improved.

6.  Order of the Probate Court entered March 23, 1967, to be effective as of March 8, 1967, declaring appellant to be completely sane, capable of

handling his own affairs, removing his disabilities and restoring his complete competency.

Objections to the introduction of these records were made on the ground that they were irrelevant, hearsay, and statements of opinions. Objection was made to the statements or depositions of the physicians and to the affidavit of the Chrestmans on the basis that appellant had no opportunity to cross-examine the persons making these statements. Appellant also objected to the offer of this evidence on the basis that there had been no showing that the persons making these statements were unavailable to testify or that appellee had made diligent effort to obtain their attendance to testify in person. Further objection was made to the Probate Court order committing appellant on the ground that it was entered in a cause to which appellee was not a party and without any hearing being afforded to Dr. Chrestman or any opportunity for him to present evidence or cross-examine witnesses upon whose statements the order was based. We find these objections to be well taken.

The affidavit by the Chrestmans could not have been admissible. It was a statement of the opinion of nonexpert witnesses as to the sanity of appellant without any statement of facts upon which they based their opinion and without showing that they were qualified to express such an opinion. *Hankins* v. *State,* 133 Ark. 38, 201 S. W. 832, L. R. A. 1918D 784.

The best that could possibly be said for the entire transcript is that it is secondary evidence of the facts therein stated. This type of evidence is admissible in the same case, or in a case involving the same issues between the same parties, when: (1) the witness who testified in the original proceeding is bevond the jurisdiction of the court or otherwise unavailable without the connivance of the party offering the testimony; and (2) his deposition could not have been obtained by the exercise of reasonable diligence; and (3) the adverse party

had an opportunity to cross-examine when the original testimony was given. See *McTighe* v. *Herman.* 42 Ark. 285; *Pine Bluff Co.* v. *Bobbitt,* 174 Ark. 41, 294 S. W. 1002; Ark. Stat. Ann. § 28-713 (Repl. 1962).

In this case, both Dr. Oldham and Dr. McCarty were obviously within the jurisdiction of the court, as they were called as witnesses on behalf of appellant. Singularly enough, appellee did not examine either physician on the matter contained in his affidavit in the probate court proceeding. Since the affidavits were ex parte and there is no indication that Dr. Chrestman appeared in, or had notice of the probate proceeding, he certainly had no opportunity to cross-examine these witnesses in that proceeding.

The answers to interrogatories were not admissible because Mrs. Kendall was not a party to the proceedings, the doctors were within the jurisdiction of the court, appellant did not have any opportunity to cross-examine these deponents, and the issues in this case were different. In this respect this case is similar to, and governed by, the decision in *Hammond* v. *Peden,* 224 Ark. 1053, 278 S. W. 2d 96. There we held that the complaint and depositions in a divorce proceeding were not admissible in an alienation of affections action by the husband. The reasons given were that collateral issues would have been raised which would only have called for the introduction of further testimony, and the parties and the cause of action were different.[1] See also *Conine* v. *Mize,* 189 Ark. 92, 70 S. W. 2d 845.

The entire transcript of the probate court proceed-

[1] We have an entirely different situation from that which obtained in *George* v. *Davie,* 201 Ark. 470, 145 S. W. 2d 729, relied upon by appellee. That action was against the estate of a deceased maker of a note. His testimony in his own bankruptcy proceeding with regard to the note was offered. The issues involved were the same in the two matters. The witness was subjected to cross-examination by an attorney representing the holder of the note in a hearing upon the identical issue in the bankruptcy court.

ings actually was inadmissible because it was offered in an entirely different proceeding relating to an entirely different cause of action. *Merrell* v. *Smith,* 228 Ark. 167, 306 S. W. 2d 700. The adjudication of insanity itself might well have been admissible in evidence as a circumstance tending to make the issue as to the appellant's nonperformance of his duty to his patient more probable but for two infirmities. The first, and perhaps more important of these, is that the probate court order was made subsequent to any act constituting any part of appellant's treatment of appellee, and would not have shown his insanity during the course of treatment, even if that were an issue in this case. *Shell* v. *Sheets.* 202 Ark. 708, 152 S. W. 2d 301; *Shores-Mueller Co.* v. *Palmer,* 141 Ark. 64, 216 S. W. 295. Secondly, the record of the probate court proceeding indicates that the adjudication order was made without appellant's being present or having had notice. *Rose* v. *Rose,* 229 Ark. 899, 318 S. W. 2d 818. In view of these factors and the further fact that the superintendent of the state hospital discharged appellant and certified that he was without psychosis and was improved only nine days after the order was made, this order should not have been admitted into evidence.

Over the objections of appellant, the circuit judge gave AMI 301 instead of AMI 1501 offered by appellant. A reading of the allegations of the complaint and a review of the evidence presented shows that appellee was contending that appellant failed to use proper care and skill and was careless and negligent in administering a drug continuously for 18 days in excessive dosages without following proper procedures or taking proper precautions to avoid the deafness of appellee which resulted. This contention clearly called for the giving of AMI 1501 in its entirety. *Walls* v. *Boyett,* 216 Ark. 541, 226 S. W. 2d 552; *Dunman* v. *Raney,* 118 Ark. 337, 176 S. W. 339. The second paragraph of that instruction was necessary because the duty in issue can certainly not be said to be a matter of common knowledge. *Lanier*

v. *Trammell*, 207 Ark. 372, 180 S. W. 2d 818; *Gray* v. *McDermott*, 188 Ark. 1, 64 S. W. 2d 94.

Appellee contends that this instruction was unnecessary because causation and the propensities of the drug are not questioned, relying on *Lanier* v. *Trammell*, *supra*. But in that case, it was established without controversy that the surgeon should have washed his hands and sterilized his instruments before commencing his operation on the plaintiff. The only issue was whether he did so. We said that no amount of medical testimony would have thrown any light on this issue. Here, the testimony is controverted, to say the least, as to what, under the circumstances relating to the patient's condition, were proper procedures and precautions. Consequently, medical testimony was necessary as lay witnesses could not be expected to have, and the knowledge and experience of jurors could not be expected to encompass, this information.

Appellant moved for a directed verdict at the conclusion of appellee's proof and again at the conclusion of all the evidence. Since appellant offered evidence after his first motion was denied, it was waived and we can only consider the second motion. *American Physicians Insurance Company* v. *Hruska*, 244 Ark. 1176, 428 S. W. 2d 622. It was shown that the doctor's only source of information about the effects of the drug and its proper use was information furnished by the manufacturer, that he was familiar with recommendations in the Physician's Book of Drugs as to periodic kidney function tests during the administration of the drug and that he failed to give the tests recommended. Even if these facts were not alone sufficient to establish a fact issue, they were when coupled with the testimony of various physicians.

Dr. Evans refused to answer a hypothetical question about standards of practice in Helena, but he gave his opinion that the dosage administered was excessive.

Dr. Shea stated that the manufacturer's directions and warnings in administering drugs should be as carefully followed as is consistent with the need for the drug. Dr. Faulkner, a Helena physician, testified that he would have continued urinalyses all during Mrs. Kendall's hospitalization rather than discontinuing them several days prior to suspension of the administration of the drug. He attributed her deafness to prolonged and excessive use of the drug, even though he said he would have given more of the drug than she got, because her infection seemed to require excessive dosages. Dr. Kurts, another Helena physician, stated that the patient was treated properly but indicated that he would have ordered another culture later than that ordered by appellant. Dr. McCarty also thought that appellee was cared for properly, but felt that he might have given another urinalysis later than the last one ordered by appellant. Dr. Kirkman, still another Helena physician, stated an opinion based on a hypothetical question that the treatment met the standards of the medical profession in the community, but stated that he possibly would have given tests in addition to those given, even though he could not say that they were necessary.

There was no error in refusing to direct a verdict.

For the errors indicated, the judgment is reversed and the case remanded for a new trial.