## Keziah G. WATTS *v.* ST. EDWARD MERCY MEDICAL CENTER

CA 00-1222                                    49 S.W.3d 149

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered July 5, 2001

*Law Offices of Charles Karr, P.A.*, by: *Charles Karr* and *Shane Roughley*, for appellant.

*Pryor, Robertson & Barry, PLLC*, by: *Gregory G. Smith* and *Jacqueline J. Cravens*, for appellee.

OLLY NEAL, Judge. Appellant Keziah G. Watts appeals from the trial court's decision granting appellee summary judgment in her medical malpractice action. In her complaint, appellant alleged that appellee's failure to diagnose her broken hip for three days after she was admitted to the hospital caused a worsening of her injury, additional pain and suffering, and additional medical expenses. After a hearing on appellee's motion for

summary judgment, the trial court concluded that appellant "failed to present any evidence by a qualified medical expert that the delay, if any, was the proximate cause of damage to the plaintiff. Consequently the defendant has failed to meet proof with proof so as to create a genuine issue of material fact." From that ruling comes this appeal. We reverse.

For the most part, the facts of this case are accepted by both parties. Appellant alleges that on Saturday, October 19, 1996, she fell in her home and that after the fall she was unable to walk or stand. Appellant was transported to the appellee's emergency room where she was seen by Dr. Steve Nelson. At the insistence of her son-in-law, appellant was admitted from the emergency room to the hospital. Appellant never underwent a physical examination to determine whether she had a broken hip.

Appellant was to be released on Tuesday, October 22, 1996. As her daughter was helping her to put on her clothes, appellant "yelped" in pain. Appellant told her daughter that her leg was hurting and had been hurting since she was admitted to the hospital. An x-ray was subsequently taken that showed appellant had suffered a broken hip. Appellant was given her first dose of pain medication on October 22, but had to wait approximately three days for surgery because she was taking Coumadin, a blood thinner.

In her complaint appellant alleged that appellee's failure to timely diagnose her broken hip caused damages including medical expenses, injuries, pain and suffering; scars and disfigurement; and care-taking expenses. Appellee subsequently moved for a summary judgment, contending that appellant had failed to provide any expert testimony to prove that any breach of the applicable standards of care by any of appellee's employees was a proximate cause of injuries suffered by appellant. In support of its motion, appellee submitted the deposition testimony of Dr. Gary Edwards. Dr. Edwards testified that assuming that the fracture occurred prior to her admittance to the hospital, the delay from the evening of the 19th until the 22nd when the x-ray was taken, did not in any way cause her fracture to be worse than it would have been if it had been discovered in the emergency room, and that he was not aware of any damages that she suffered or sustained as a result of the delay. Dr. Edwards also testified appellant did not complain to him of any pain prior to the taking of the x-ray.

Appellee also presented the affidavit testimony of Dr. Nils K. Axelsen, an orthopedic surgeon, who stated that there are occasions

where a broken hip does not produce pain. Dr. Axelsen stated that it is not unusual for a patient who has suffered the type of injury as appellant not to experience any initial pain. Notably, the court supported its ruling with Dr. Axelsen's statement that a review of appellant's chart showed no indication that appellant complained of hip or groin pain during her first few days of hospitalization.

Appellant offered her daughter's testimony that appellant told her that her leg had been hurting since the 19th. Further, in deposition testimony, Dr. Steve Nelson testified "...more likely than not that it would be painful... I would think that generally hip fractures are painful."

Summary judgment is appropriate when there is no genuine question of material fact to be litigated. *Wallace v. Broyles*, 332 Ark. 189, 961 S.W.2d 712 (1998). The burden of proving that there is no genuine issue of material fact is upon the movant, and all proof submitted must be viewed favorably to the party resisting the motion. *Wyatt v. St. Paul Fire & Marine Ins. Co.*, 315 Ark. 547, 868 S.W.2d 660 (1997). Once the moving party established a *prima facie* entitlement to summary judgment by affidavits, depositions, or other supporting documents, the opposing party must meet "proof with proof" and demonstrate a genuine issue of material fact. *Sanders v. Bailey Community Human Services Public Facilities Board*, 330 Ark. 675, 956 S.W.2d 187 (1997). On appellate review, we determine if summary judgment was proper based on whether the evidence presented by the movant left a material question of fact unanswered. *Keller v. Safeco Ins. Co. of Am.*, 317 Ark. 308, 877 S.W.2d 90 (1994). Any doubts and inferences must be resolved against the moving party. *Kelly v. National Union Fire Ins. Co.*, 327 Ark. 329, 937 S.W.2d 660 (1997).

The Arkansas Medical Malpractice Act is codified at Ark. Code Ann. §§ 16-114-201 through 209 (1987). In *Blankenship v. Burnett*, 304 Ark. 469, 803 S.W.2d 539 (1991), our supreme court stated:

> Section 16-114-206(a) specifies that in any action for medical injury, the plaintiff must prove the applicable standard of care; that the medical provider failed to act in accordance with that standard; and that such failure was a proximate cause of the plaintiff's injuries.

The statute implements the traditional tort standard of requiring proof that "but for" the tortfeasor's negligence, the plaintiff's injury or death would not have occurred.

■ We have held that the proof required to survive a motion for summary judgment in a medical malpractice case must be in the form of expert testimony. *Oglesby v. Baptist Medical System*, 319 Ark. 280, 891 S.W.2d 48 (1995). It is simply not enough for an expert to opine that there was negligence that was the proximate cause of the alleged damages. *Aetna Casualty & Sur. Co. v. Pilcher*, 244 Ark. 11, 424 S.W.2d 181 (1968). The opinion must be stated within a reasonable degree of medical certainty or probability. *Montgomery v. Butler*, 309 Ark. 491, 834 S.W.2d 148 (1992).

■ Our courts have also held, however, that expert testimony is not necessary *per se* in every medical malpractice case. Our law is well-settled that expert testimony is required only when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, when the applicable standard of care is not a matter of common knowledge, and when the jury must have the assistance of experts to decide the issue of negligence. *Robson v. Tinnin*, 322 Ark. 605, 911 S.W.2d 246 (1995) (citing *Prater v. St. Paul Ins. Co.*, 293 Ark. 547, 739 S.W.2d 676 (1987)). To emphasize that expert testimony is not required in every medical-malpractice case per se, the court in *Hasse v. Starnes, M.D.*, 323 Ark. 263, 915 S.W.2d 675 (1996) repeated a statement from *Graham v. Sisco*, 248 Ark. 6, 449 S.W.2d 949 (1970), that was quoted in *Davis v. Kemp*, 252 Ark. 925, 481 S.W.2d 712 (1972):

> The necessity for the introduction of expert medical testimony in malpractice cases was exhaustively considered in *Lanier v. Trammell*, 207 Ark. 372, 180 S.W.2d 818 (1944). There we held that expert testimony is not required when the asserted negligence lies within the comprehension of a jury of laymen, such as a surgeon's failure to sterilize his instruments or to remove a sponge from the incision before closing it. On the other hand, when the applicable standard of care is not a matter of common knowledge the jury must have the assistance of expert witnesses in coming to a conclusion upon the issue of negligence.

*Id.* at 926, 481 S.W.2d 712-13.

In this case, expert testimony is not needed to support appellant's argument that she suffered pain from October 19 to October

22. Here all the experts presented by appellee testified that appellant's injury was not worsened by the delay. Drs. Edwards and Axelsen testified that appellant's chart did not indicate that she complained of any pain prior to October 22, but that claim is refuted by the hospital record. The abstract reveals that on October 21, appellant told someone that her left leg and foot were still sore, indicating that she stated that they were sore previously. Moreover, Dr. Axelsen's statement that injuries of the type suffered by appellant do not always cause initial pain does not support the conclusion that appellant did not suffer any pain. Dr. Nelson testified: "...more likely than not that it would be painful... I would think that usually hip fractures are painful." In fact there was no reason for appellant to bring an expert to say that her type of injury sometimes causes initial pain because the opinions of Dr. Nelson and Dr. Axelsen state just that.

■ The evidence in support of this judgment decision comes down to the doctors saying no damage was caused by the three-day wait; appellant stating that she was in pain; her medical records providing some support for this claim; and the opinions of Dr. Nelson and Dr. Axelsen that these types of injuries generally cause pain. We hold a fact question was presented by this evidence, and reverse and remand.

Reversed and remanded.

JENNINGS, ROBBINS and BAKER, JJ., agree.

PITTMAN, J., concurs.

BIRD, J., dissents.

SAM BIRD, Judge, dissenting. I respectfully dissent from the majority opinion because I believe that the trial court was correct in finding that the appellant did not meet proof with proof and in finding that no genuine issue of material fact existed. Therefore, I would affirm the court's grant of appellee's motion for summary judgment.

The issue in this case is whether appellant met her burden of proof in establishing that a genuine issue of fact existed as to whether she suffered any pain as a result of appellee's failure to diagnose her broken hip. The majority argues that she met her burden even though no expert testimony was presented to support

her argument that she suffered pain. I do not agree with the majority opinion's position that it can be assumed that she suffered pain, without any medical testimony to support such a finding.

Proof required to survive a motion for summary judgment in a medical malpractice case must be in the form of expert testimony. *Ford v. St. Paul Fire & Marine Ins. Co.*, 339 Ark. 434, 5 S.W.3d 460 (1999). The expert testimony must be stated within a reasonable degree of medical certainty or probability. *Id.*

In finding that this case should be reversed and remanded, the majority opinion states that a fact question was presented because appellant stated that she was in pain, that her medical records support such a claim, and that two doctors in their depositions stated that "these types of injuries" generally cause pain.

I do not find that the abstract supports those findings. Viewing the evidence in the light most favorable to appellant, as this court must do, I do not find there to be anything in the abstract to suggest that any genuine issue remained. The testimony that appellant suffered pain came from her daughter, who stated that when appellant was getting dressed she yelped in pain. However, the medical records do not reflect that appellant, herself, complained of any hip pain. In fact, as the majority opinion points out, Dr. Edwards testified that she did not complain to him of any pain prior to the taking of the x-ray diagnosing the broken hip. Also, Dr. Axelsen testified that he was not aware of anything in her medical records that indicated that appellant ever complained of any pain. In addition, Dr. Axelsen stated that a broken hip does not always cause pain. Also, Watts's medical records reflect that she did not ask for, nor was she given, any pain medication during the three days preceding the diagnosis of her broken hip.

The majority opinion relies upon case law that states that expert testimony is not needed when the asserted negligence lies within the comprehension of a jury of laymen, such as the failure of a doctor to sterilize his instruments or to remove a sponge from an incision before closing it. I do not agree that expert testimony was not needed in this case. For its proposition that medical testimony was not needed, the majority relies upon *Robson v. Tinnin*, 322 Ark. 605, 911 S.W.2d 246 (1995). However, in *Robson*, the court upheld the trial court's grant of summary judgment, holding that expert testimony was needed to establish negligence. The court then wrote, "[T]he argument assumes that simply because treatment is available for medical injury, it follows that it is negligence for a

medical care provider not to provide the treatment. That is not and has never been the law of medical malpractice."

In the landmark case of *Lanier v. Trammell*, 207 Ark. 372, 180 S.W. 2d 818 (1944), the court held that when expert testimony will shed no light on the issue of medical malpractice alleged in the lawsuit, the testimony is not needed. In that case, the surgeon performing an eye operation failed to sterilize his instruments or wash his hands before performing the surgery. The appellant in that case, who suffered an infection as a result of the surgery, stated that the surgeon was guilty of negligence because of his failure to wash his hands and sterilize his instruments. The court held that expert testimony was not needed because "[t]here was no dispute whatever as to what was the proper course to be pursed by appellant in preparing for and performing the operation." *Id*. at 378, 180 S.W. 2d at 820-21. The court went on to state that "[i]t was not denied that it was necessary and proper for appellant to cleanse his hands thoroughly and to sterilize his instruments. The dispute in this case was as to whether or not appellant followed the course which is conceded to be necessary and proper." *Id*. However, the court noted, "If there could, under the testimony, be any dispute as to the method used in the operation or *in the treatment* of the patient it would be necessary to establish the correct method by expert witnesses ...." *Id*. (emphasis added). Further, this court has held that a jury should not be permitted to speculate whether or not the experts in the practice of their profession have pursued the proper course of procedure. *Id*. at 382, 180 S.W.2d at 822-23 (quoting from *Gray v. McDermott*, 188 Ark. 1, 64 S.W.2d 94 (1933)).

In the case at bar, we do not have a simple question like the one in *Lanier, supra*. Instead, we are faced with the question of whether the doctors treating appellant "pursued the proper course of procedure" and whether their failure to do so caused appellant to suffer pain. Even the doctors, as expert witnesses, disagreed on whether pain is readily associated with a broken hip. Assuming that appellant did suffer pain, the first time it was noted in her medical chart was the day it was diagnosed. And none of the doctors testified within a reasonable degree of medical certainty that appellant suffered pain. As stated above, there was testimony that she did not complain and was not on pain medication during the three days after she was brought to the emergency room.

In summary, we cannot simply assume that appellant suffered pain. Clearly no expert testimony was offered that stated, within a reasonable degree of medical certainty, that appellant suffered pain.