Traci MITCHELL *v.* Dr. Lance LINCOLN

05-1369                                                     237 S.W.3d 455

Supreme Court of Arkansas
Opinion delivered June 22, 2006

[Rehearing denied September 28, 2006.]

*Law Offices of Charles Karr, P.A.*, by: *Charles Karr* and *Shane Roughley*, for appellant.

*Cox, Cox & Estes, PLLC,* by: *Walter B. Cox* and *James R. Estes*, for appellee.

Tom Glaze, Justice. This is an appeal from the trial court's decision to grant summary judgment in a medical-malpractice case in favor of defendant-appellee Dr. Lance Lincoln. The court of appeals reversed the trial court's decision in a 2-2-2 vote, and Dr. Lincoln petitioned this court for review. When this court grants a petition for review, we consider the appeal as though it had been originally filed in this court. *Dixon v. Salvation Army*, 360 Ark. 309, 201 S.W.3d 386 (2005); *Sharp County Sheriff's Office v. Ozark Acres*, 349 Ark. 20, 22, 75 S.W.3d 690 (2002).

The plaintiff-appellant in this case, Traci Mitchell, is the widow of Guy Mitchell, who had been diagnosed with chronic myelogenous leukemia in June of 1994. Guy was admitted to M.D. Anderson Cancer Center in Houston on August 3, 1994, and discharged on August 13, 1994; he returned to M.D. Anderson for a bone marrow transplant on September 22, 1994. On January

6, 1995, Dr. James Gajewski of M.D. Anderson sent a letter to Guy's treating physician, Dr. Lincoln, containing the following recommendation:

> All blood transfusions need to be irradiated. His original blood type was A-positive, [and] his donor type is O-positive. I would recommend, if he needs a blood transfusion, to transfuse him with O-positive red cells. If he requires platelet products, at this point in time he should be transfused with B-positive platelets. All blood products should be given with a Pall filter to reduce risk of cytomegalovirus infection. An alternative would be to use CMV-negative blood products.

Guy required blood transfusions in the early months of 1995; between January 18, 2005, and March 22, 1995, Dr. Lincoln performed eleven blood transfusions. However, Dr. Lincoln failed to use O-positive red cells or B-positive platelets. Guy was readmitted to M.D. Anderson on March 24, 1995, and upon his discharge, he was admitted to the University of Arkansas for Medical Sciences and remained there until he was discharged on July 14, 1995. Guy died at his home in Flippin on July 23, 1995.

Traci Mitchell was appointed special administrator of Guy's estate on September 8, 1995. On October 29, 1996, Mitchell filed suit against Dr. Lincoln, Baxter County Regional Hospital, St. Paul Fire & Marine Insurance Company, and John Does Numbers 1-3. After the defendants moved for summary judgment, Mitchell moved for a voluntary nonsuit, which was granted on August 20, 1999.[1] Mitchell then refiled her complaint on August 17, 2000. In her complaint, Mitchell asserted that Dr. Lincoln had violated the standard of care and had been negligent in giving Guy the "wrong type of blood products as ordered and recommended by his physicians at M.D. Anderson."

Dr. Lincoln answered and moved for summary judgment, arguing that Mitchell had not produced any expert testimony regarding the standard of care in her medical-malpractice case, or

---

[1] The trial court dismissed St. Paul Fire & Marine Insurance Company from this action for reasons unrelated to this appeal. When the court granted Dr. Lincoln's motion for summary judgment, the order did not mention the John Doe defendants, and the court of appeals initially dismissed Mitchell's appeal without prejudice for lack of a Rule 54(b) certificate. Mitchell subsequently took a nonsuit with respect to the John Doe defendants and the trial court entered an order treating Mitchell's motion as a motion to dismiss the John Doe defendants, which the court granted on February 2, 2005.

any expert testimony demonstrating that Dr. Lincoln's alleged negligence was the proximate cause of Guy's death. In support of his motion for summary judgment, Dr. Lincoln attached an affidavit from Dr. Gary Markland, a physician licensed in the State of Arkansas. Dr. Markland averred that he was "familiar with the standard of care in Arkansas as it relates to the transfusion of blood and blood products to patients suffering with chronic myelogenous leukemia." In addition, Dr. Markland stated that he had reviewed Guy's medical records, and based on his review, Dr. Markland stated that it was his medical opinion, to a reasonable degree of medical certainty, that Guy was not given the "wrong type" of blood, that the transfusions that he did receive were within the applicable standard of care, and that the transfusions were not the proximate cause of Guy's death.

Mitchell responded to Dr. Lincoln's motion for summary judgment, asserting that there were genuine issues of material fact. In support of her response, Mitchell attached a copy of a letter from Dr. Gajewski to Dr. Lincoln; in that letter, Dr. Gajewski stated his recommendation, quoted above, that Guy receive O-positive red cells and B-positive platelets. Mitchell subsequently filed a "first supplement" to her response to Dr. Lincoln's motion for summary judgment, attaching a copy of a clinic note from Dr. Gajewski in which Dr. Gajewski noted that Guy had "received what we think is six units of group A red cells inappropriately in Arkansas . . . , and we have previously recommended that he receive group O [red blood cells]."

In his reply to Mitchell's response to his motion for summary judgment, Dr. Lincoln asserted that summary judgment was appropriate because Mitchell had failed to establish 1) the existence of medical negligence with expert testimony; 2) the appropriate standard of care; and 3) the existence of proximate cause. See Ark. Code Ann. § 16-114-206 (Repl. 2006). In response, Mitchell filed a "second supplemental response" to the summary-judgment motion, attaching an affidavit from Dr. Barry L. Singer, a hematologist-oncologist licensed in Pennsylvania, who stated, in relevant part, the following:

> I have reviewed the medical records of Guy Mitchell concerning his chronic myelogenous leukemia. The standard of care would require a primary care physician, such as Dr. Lincoln, to follow the recommendations of a specialist, such as Dr. Gajewski. Transfusing Mr. Mitchell with A-positive red cells, as was done in this case, was a violation of the standard of care. In my opinion, within a reason-

able degree of medical certainty, the failure to transfuse Mr. Mitchell with O-positive red cells and B-positive platelets as a significant contributing factor in the recrudescence[2] of his disease and ultimate demise.

After a hearing, the trial court entered an order on October 3, 2003, granting Dr. Lincoln's motion for summary judgment. In its order, the court found that Mitchell had failed to provide expert testimony that established the standard of care, that Dr. Lincoln had breached that standard of care, and that any alleged negligence was the proximate cause of Guy's death. Specifically, the court found that Dr. Singer's affidavit did not say that he was familiar with the standard of care in Arkansas, and as such, it failed to raise an issue of fact as to whether there was negligence in this case. The court, however, retained jurisdiction of the matter to give the parties a chance to file motions for reconsideration, if such were deemed warranted.

Mitchell filed a motion for reconsideration on October 15, 2003, attaching an additional affidavit from Dr. Singer in which the doctor stated his opinion as to the standard of care for a physician in Baxter County. However, the trial court struck the additional affidavit from the record and declined to consider the new allegations contained therein, ruling that it had given leave to raise additional legal arguments, not to provide additional facts. The court then concluded once more that Mitchell had failed to provide evidence of the standard of care in Baxter County and that she had failed to meet proof with proof to rebut Dr. Markland's claim that Dr. Lincoln's alleged negligence was not the proximate cause of Guy's death.

Mitchell appealed the trial court's decision to the court of appeals, arguing that the trial court erred in finding there was no genuine issue of material fact. She did not, however, appeal the trial court's decision to strike the supplemental affidavit of Dr. Singer; therefore, we can only consider, as did the trial judge, whether Dr. Singer's first affidavit was sufficient to create a fact issue that would survive a motion for summary judgment.

A trial court may grant summary judgment only when it is clear that there are no genuine issues of material fact to be litigated, and that the party is entitled to judgment as a matter of law. *Harris*

---

[2] To "recrudesce" means to "break out anew or come into renewed activity." *American Heritage College Dictionary* 1142 (3d ed. 1997).

*v. City of Fort Smith*, 359 Ark. 355, 197 S.W.3d 461 (2004). Once the moving party has established a prima facie case showing entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Young v. Gastro-Intestinal Ctr.*, 361 Ark. 209, 205 S.W.3d 741 (2005). On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998).

Under Arkansas law, the burden of proof for a plaintiff in a medical malpractice case is fixed by statute. *See* § 16-114-206. The statute requires that, in any action for a medical injury, expert testimony is necessary regarding the skill and learning possessed and used by medical care providers engaged in that speciality in the same or similar locality. *See Young, supra; Williamson v. Elroy*, 348 Ark. 307, 72 S.W.3d 489 (2002). Specifically, the statute provides as follows:

> (a) In any action for medical injury, when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, the plaintiff shall have the burden of proving:

> (1) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant, the degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he or she practices or in a similar locality;

> (2) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant that the medical care provider failed to act in accordance with that standard; and

> (3) By means of expert testimony provided only by a qualified medical expert that as a proximate result thereof the injured person suffered injuries that would not otherwise have occurred.

We first address Mitchell's argument that she was not required to produce expert testimony because the asserted negligence lies within a jury's comprehension as a matter of common

knowledge. As set out above, our medical-malpractice statute requires expert testimony when the standard of care is not a matter that lies within the jury's comprehension as a matter of common knowledge. *See* Ark. Code Ann. § 16-114-206(a) (Repl. 2006); *Skaggs v. Johnson*, 323 Ark. 320, 915 S.W.2d 253 (1996); *Davis v. Kemp*, 252 Ark. 925, 481 S.W.2d 712 (1972). On appeal, Mitchell notes that her response to Dr. Lincoln's motion for summary judgment incorporated a letter from Dr. Gajewski about transfusing Guy with O-positive blood. Mitchell argues that a jury of laymen should be able to understand that the recommendations of a specialist in the field should be followed, and that, therefore, she did not need expert testimony to create a fact question.

We disagree. Our court of appeals has correctly noted that "mere statements of what treatment should or should not have been provided do not qualify as statements setting forth the applicable standard of care." *See Dodd v. Sparks Reg'l Med. Ctr.*, 90 Ark. App. 191, 204 S.W.3d 579 (2005) (declining to find an expression of the standard of care in a statement that, "if the attending doctors and hospital staff had exercised due care, it is more likely than not that" the plaintiff's decedent would not have committed suicide). *See also Robson v. Tinnin*, 322 Ark. 605, 911 S.W.2d 246 (1995) (rejecting an argument that assumed that "simply because treatment is available for a medical injury, it follows that it is negligence for a medical care provider not to provide the treatment").

Moreover, Mitchell wrongly presumes that her case falls within the "common knowledge exception." As noted above, a plaintiff does not need to provide expert testimony when the asserted negligence lies within the comprehension of a jury of laymen. *See Haase v. Starnes*, 323 Ark. 263, 915 S.W.2d 675 (1996). The *Haase* court discussed the issue as follows:

> The necessity for the introduction of expert medical testimony in malpractice cases was exhaustively considered in *Lanier v. Trammell*, 207 Ark. 372, 180 S.W.2d 818 (1944). There we held that expert testimony is not required when the asserted negligence lies within the comprehension of a jury of laymen, such as a surgeon's failure to sterilize his instruments or to remove a sponge from the incision before closing it. On the other hand, when the applicable standard of care is not a matter of common knowledge the jury must

have the assistance of expert witnesses in coming to a conclusion upon the issue of negligence.

*Haase*, 323 Ark. at 269, 915 S.W.2d at 678.

The vast majority of our cases to have considered this issue hold that expert medical testimony is necessary because the alleged medical negligence is not within the comprehension of a jury of laymen. *See Fryar v. Touchstone Physical Therapy*, 365 Ark. 295, 229 S.W.3d 7 (2006) (connection between preexisting neck and spine injuries and alleged injuries caused by an unlicensed chiropractor's treatment "would not be a matter of common knowledge or understanding"); *Eady v. Lansford*, 351 Ark. 249, 92 S.W.2d 57 (2002) (expert testimony required to rebut defense testimony regarding whether a physician has a duty to inform a patient about rare side effects of a medication); *Skaggs v. Johnson, supra* (medical decision to leave a piece of drainage tube in a patient's leg, as opposed to an inadvertent leaving of objects in a patient's body, presented an issue outside the jury's common knowledge and required expert testimony); *Robson v. Tinnin, supra* (matters relating to the changing of dental implants and treatment of fractured teeth are not matters of common knowledge); *Davis v. Kemp, supra* (whether it was proper or improper on a first medical visit to irrigate a wound and administer antibiotics was not a matter of common knowledge, and the failure to find a piece of glass on the first visit would hinge upon whether or not good medical practice required the probing of the wound on the first visit); *but cf. Watts v. St. Edward Mercy Med. Ctr.*, 74 Ark. App. 406, 49 S.W.3d 149 (2001) (no need to provide expert testimony on the issue of whether a broken hip can cause pain).

In the instant case, although it may be common knowledge that there are four major blood types, it can hardly be said to be common knowledge that the transfusion of a leukemia patient with an allegedly improper blood type can cause injury to the patient. Although Mitchell attempts to frame the issue as being whether a jury of laymen can understand that an internist should follow a specialist's recommendations, the issue is more complicated than that, because it also requires an understanding of *why* such recommendations should be followed. That is, without expert testimony demonstrating why the recommendations should be followed, the jury cannot know how, why, or whether the alleged negligence caused the plaintiff's harm.

Having established that Mitchell was required to provide expert testimony, we next consider her argument that the trial court erred in discounting Dr. Singer's first affidavit[3] on the basis that it did not address the standard of care in Arkansas or Baxter County. The medical–malpractice statute and our case law are specific in stating that there must be an attestation by an expert regarding this locality or a similar one, and this court has affirmed summary judgment for the failure to do so. *Young, supra*; *Reagan v. City of Piggott*, 305 Ark. 77, 805 S.W.2d 636 (1991).

In his affidavit, Dr. Singer stated that he is a physician licensed to practice medicine in Pennsylvania and that he is a specialist in hematology-oncology. Regarding the standard of care, Dr. Singer stated that the standard of care "would require a primary care physician, such as Dr. Lincoln, to follow the recommendations of a specialist, such as Dr. Gajewski." The affidavit is silent as to any locality, but nonetheless, Mitchell argues that it is "implicit in Dr. Singer's affidavit that he was addressing the standard of care in Baxter County, Arkansas, since he mentioned the defendant by name."

This court has held that an expert need not be familiar with the practice in the particular locality, but must demonstrate a familiarity with the standard of practice in a similar locality, either by his testimony or by other testimony showing the similarity of localities. *See Wolford v. St. Paul Fire & Marine Ins. Co*, 331 Ark. 426, 961 S.W.2d 743 (1998); *Corteau v. Dodd*, 299 Ark. 380, 773 S.W.2d 436 (1989); *Gambill v. Stroud*, 258 Ark. 766, 531 S.W.2d 945 (1976). In *Corteau, supra*, this court affirmed a trial court's grant of summary judgment to the defendant doctors where the plaintiff's expert's affidavit "contained nothing about his having knowledge as to how a radiologist in a community like North Little Rock should have interpreted" an x-ray requisition. *Corteau*, 299 Ark. at 386, 773 S.W.2d at 439. Similarly, in *Young v. Gastro-Intestinal Center, supra*, this court held that the plaintiff did not establish the standard of care when her expert witnesses, a doctor

---

[3] As mentioned above, Dr. Singer's second affidavit *did* state a familiarity with the standard of care in Baxter County. However, Mitchell does not argue that the trial court erred in striking the second supplemental affidavit. This court has consistently held that it will not make an appellant's argument for him or her. *See Hanlin v. State*, 356 Ark. 516, 157 S.W.3d 181(2004); *Phillips v. Earngey*, 321 Ark. 476, 481, 902 S.W.2d 782, 785 (1995) ("[i]t is axiomatic that we refrain from addressing issues not raised on appeal").

and nurse from Texas, failed to testify regarding the standard of care in Little Rock. *Young*, 361 Ark. at 213, 205 S.W.3d at 745.

■ Dr. Singer's affidavit is devoid of any mention of the standard of care in Baxter County. Accordingly, because our case law is explicit in requiring expert testimony regarding the standard of care in the same or similar locality, Mitchell's expert's affidavit was insufficient to create a question of fact on this issue, and the trial court did not err in granting Dr. Lincoln's motion for summary judgment.[4]

Affirmed.

---

[4] Dr. Lincoln raises an additional argument wherein he suggests that Dr. Singer's affidavit also failed to state that Dr. Lincoln's negligence was the proximate cause of Guy Mitchell's injuries. However, we find it unnecessary to reach this issue, as Dr. Singer's affidavit did not adequately state the standard of care for the locality.