SLIP OPINION

Cite as 2017 Ark. App. 613

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV–16–786

NATASHA ENGLEMAN

APPELLANT

V.

CINDYE MCCULLOUGH; ST. JOHN'S
CLINIC, INC., A/K/A MERCY CLINICS
SPRINGFIELD COMMUNITIES;
SISTERS OF MERCY HEALTH SYSTEM
ST. LOUIS A/K/A MERCY HEALTH
SYSTEMS OF ST. LOUIS

APPELLEES

**OPINION DELIVERED:** NOVEMBER 15, 2017

APPEAL FROM THE CARROLL
COUNTY CIRCUIT COURT,
EASTERN DISTRICT
[NO. 08ECV-12-154]

HONORABLE SCOTT JACKSON,
JUDGE

AFFIRMED

## ROBERT J. GLADWIN, Judge

Appellant Natasha Engleman appeals the judgment entered on February 10, 2016, by the Carroll County Circuit Court in favor of appellees Cindye McCullough, St. John's Clinic, Inc., a/k/a Mercy Clinics Springfield Communities, and John Does 1–3 following a jury trial in a nursing-negligence case. Appellant argues that the trial court erred in giving Arkansas Model Jury Instruction (AMI) 1501 over the objection of her counsel and, in effect, instructing the jury to consider only the testimony of the nurses and not to consider her testimony concerning the anatomic location where Nurse McCullough administered the intramuscular-steroid injection on March 3, 2011. She also argues that the trial court erred in refusing to give the modified version of AMI 1501 that she requested and proffered. We affirm.

I. *Facts*

On March 3, 2011, appellant presented to St. John's Clinic in Berryville, Arkansas, to receive an intramuscular-steroid injection to treat her allergies. The injection was administered by Nurse McCullough, a licensed practical nurse (LPN) employed by St. John's Clinic. Although appellant's chart reveals no complaints or complications immediately following the injection, appellant claims that just after the injection she experienced severe shooting pain down her leg that worsened over time. She further related that she was unable to walk out of the clinic and had to hobble out instead.

Appellant's grandmother, Karon Richert, was present in the waiting room to pay for her granddaughter's shot. According to Ms. Richert, appellant was limping severely when she emerged from the room where the shot had been administered.

When appellant returned to the clinic to see Dr. Craig Milam, he noted that her left knee was swollen and tender. He prescribed crutches and a knee brace and ordered a gout test, which came back negative. Dr. Milam testified that before March 3, 2011, the date of the injection, appellant had not complained about her leg.

As appellant's severe leg pain and weakness continued and she developed a foot drop, she consulted informally with a friend, K.D. Zeit, who is a registered nurse (RN), and began to wonder whether her sciatic nerve had been injured as a result of the shot.

She was subsequently seen at a clinic that referred her for EMG testing by neurologist Dr. Omar Al Khatib. The first EMG testing was suggestive, but inconclusive, for sciatic neuropathy, and the second EMG test results were normal.

SLIP OPINION

Through research, appellant learned of a California neurosurgeon, Dr. Aaron Filler, a former director of the Peripheral Nerve Surgery Program at Cedar Sinai Medical Center in Los Angeles, California. Dr. Filler is one of the inventors of the neurogram procedure, a specialized MRI procedure developed to visualize nerves. Appellant traveled to California to see Dr. Filler who ordered a neurogram study and interpreted the results. According to Dr. Filler's report, the study demonstrated an abnormality within her sciatic nerve consistent with mechanical injury to the sciatic nerve. Dr. Filler also diagnosed appellant with Reflex Sympathetic Dystrophy (RSD), or Chronic Regional Pain Syndrome (CRPS), and with foot drop.

Dr. Filler performed surgery on appellant on August 26, 2011, during which he explored the area around the nerve and removed extensive scar tissue that had adhered to the nerve. Dr. Filler confirmed his earlier neurogram report of injury to appellant's sciatic nerve consistent with a needle-injection injury. Dr. Filler also observed adhesions to appellant's sciatic nerve along with fibrosis and scarring around the nerve. Appellant returned on June 28, 2013, for a second surgery performed by Dr. Filler to resection the piriformis muscle of her left hip at the level of the sciatic-nerve injury.

Appellant's pain management for RSD or CRPS initially was conducted by Dr. Cathy Lou and subsequently by Dr. Jason Holt. Their treatment consisted of narcotic medications and nerve blocks, both of which failed to resolve appellant's pain.

Appellant's leg has continued to deteriorate and atrophy. She remains in severe pain and has not walked unassisted since the incident and now uses a wheelchair. At the time of her injury, appellant was twenty-two years old and in excellent health. She was a dancer,

and prior to her injury she taught dance to area elementary-school students. She has not worked since her injury.

Appellant filed her lawsuit against Nurse McCullough and her employers on November 21, 2012, alleging that Nurse McCullough negligently administered the injection into appellant's sciatic nerve. A jury trial was held during the week of January 25 through 29, 2016. Regarding liability, a contested issue was the anatomic location where Nurse McCullough administered the intramuscular injection thought to have caused appellant's alleged injury. Nurse McCullough testified that she gave the injection in the gluteus medius, the upper outer quadrant of the hip. Appellant, however, testified and marked on an anatomical chart that she had been given the injection in her gluteus maximus, or inner buttock, which overlies the sciatic nerve. Both parties called nurses who testified as experts and agreed that the injection should be given in the gluteus medius. Similarly, they all agreed that an injection into the gluteus maximus would violate the relevant standard of care.

Appellees' expert nurses, Susan Greenwood and Shannon Finley, likewise testified that in their opinion, appellee Nurse McCullough administered the injection in appellant's gluteus medius. Appellees' expert neuroradiologist, Dr. Jay Tsuruda, testified that appellant did not suffer a sciatic-nerve injury from the needle because it is impossible for the 2.5-centimeter needle, which was used by Nurse McCullough, to make contact with the sciatic nerve. Appellant's expert, Dr. Filler, testified to the contrary that in his opinion appellant sustained a sciatic-nerve injury from the injection needle.

After the presentation of evidence, the attorneys and the trial court discussed jury instructions. Appellant's counsel objected to the trial court's giving AMI 1501, specifically the second paragraph that instructed the jury that in deciding whether Nurse McCullough applied the degree of skill and learning required of her, the jury may only consider the evidence presented by the nurses called as expert witnesses. Appellant's counsel argued that this instruction essentially directed the jury to disregard or not consider appellant's testimony as to the anatomical location that Nurse McCullough administered the shot. Appellant's attorney offered an alternative instruction, a modified version of AMI 1501, which contained an alternate second paragraph that instructed the jury that only the nurses called as experts could offer an opinion on the ultimate question of whether Nurse McCullough was negligent. The trial court rejected that proffered instruction and gave the standard AMI 1501 instruction as follows:

> In treating a patient, a licensed practical nurse (LPN) must possess and apply with reasonable care the degree of skill and learning ordinarily possessed and used by members of her profession in good standing, engaged in the profession of nursing in the locality in which Cindye McCullough practices or in a similar locality.
>
> In determining the degree of skill and learning the law required *and in deciding whether Cindye McCullough, LPN, applied the degree of skill and learning which the law required, you may consider only the expert testimony provided by the nurses.*
>
> In deciding whether any negligence of Cindye McCullough was a proximate cause of injuries to Natasha Engleman that would not otherwise have occurred, it is the duty of Natasha Engleman to prove her injuries with the testimony of qualified medical experts.
>
> In considering the evidence on the issues in this case, you are not required to set aside your common knowledge, but you have the right to consider all the evidence in light of your own observations and experiences in the affairs of life.

(Emphasis added.)

After the jury was instructed, it retired to deliberate and, after briefly doing so, returned a unanimous verdict for the defense after approximately twenty minutes. A judgment was entered on February 10, 2016, and appellant filed a timely notice of appeal on March 4, 2016.

## II. *Standard of Review*

Arkansas appellate courts have stated that a party is entitled to a jury instruction when it is a correct statement of the law and there is some basis in the evidence to support giving the instruction. *Millsap v. Williams*, 2014 Ark. 469, 449 S.W.3d 291. When instructions are offered that do not contain an essential element or do not accurately state the law applicable to the case, the instruction should not be given. *Id*. Generally, AMI instructions should be used and non-AMI instructions should be used *only* when AMI instructions cannot be used or modified. *Id*. It is the duty of the trial court to instruct the jury, and each party has the right to have the jury instructed on the law of the case with clarity and in such a manner as to leave no grounds for misrepresentation or mistake. *McCorkle Farms, Inc. v. Thompson*, 79 Ark. App. 150, 84 S.W.3d 884 (2002).

When an erroneous jury instruction is given, it is presumptively prejudicial, and the case will be reversed unless it appears that the error was harmless. *See Cincinnati Life Ins. Co. v. Mickles*, 85 Ark. App. 188, 148 S.W.3d 768 (2004). Our supreme court has stated that when an instruction is inherently erroneous and binding, it cannot be cured by a correct instruction. *Whaley v. Crutchfield*, 226 Ark. 921, 294 S.W 2d 775 (1956). Under the standard of review in this matter, this court will not reverse a trial court's decision to submit a jury



instruction unless the trial court abused its discretion. *Nelson v. Stubblefield*, 2009 Ark. 256, 308 S.W.3d 586.

### III. *Discussion*

#### A. Did Trial Court Err in Giving AMI 1501 Over Objection of Counsel?

The jury's decision on this case was contingent on which part of appellant's body Nurse McCullough administered the intramuscular injection of steroids, the gluteus medius as claimed and documented by Nurse McCullough or, alternatively, the gluteus maximus as claimed by appellant. Because there were only two individuals in the exam room when the injection was administered, the case turned on a credibility question—appellant versus Nurse McCullough.

Appellant argues on appeal that the standard AMI 1501 instruction given by the trial court directs the jury not to consider her testimony concerning the location where Nurse McCullough gave her the injection. She claims that the proffered modified version of AMI 1501 that her counsel proposed remedied the problem in that it contained key language stating that only the nurses could offer an opinion on the ultimate question of whether Nurse McCullough was negligent.

Appellant cites *Duke v. Lovell*, 262 Ark. 290, 556 S.W.2d 416 (1977), in which our supreme court reversed a verdict in favor of a physician charged with negligence in a wrongful-death case, holding that the trial court's decision to include the second paragraph of AMI 1501 impermissibly misled the jury. In *Duke*, the issue was whether the physician had recommended hospitalization of a patient given the decedent patient's presentation of an abnormal EKG, a prior heart attack, and complaints of chest pains. The physician

presented expert testimony that he had recommended hospitalization to the decedent patient and testimony that the relevant standard of care required a recommendation of hospitalization. Contrary evidence was presented that no such recommendation had been made by the physician. Following presentation of the evidence, jury instructions were given that included standard AMI 1501, the second paragraph of which stated that in deciding whether a physician applied the requisite degree of skill and learning, the jury may only consider the evidence presented by the physicians. In reversing and remanding, our supreme court stated that giving AMI 1501 without modification misled and restricted the jury in arriving at their verdict on a critical issue—whether the hospitalization was recommended. *Id*.

Appellant points out that in *Duke*, our supreme court discussed giving AMI 1501—along with AMI 102—in the same set of instructions to a jury. Appellant maintains that the case seems to indicate that when a malpractice case involves issues that do *not* require expert testimony, both AMI 102 and AMI 1501 should be given, whereas in cases involving only standard-of-care issues, AMI 1501 should be given without AMI 102. Appellant argues that here, much like in *Duke*, *supra*, the case involved a simple determination—who the jury should believe regarding the anatomic location on appellant's body where Nurse McCullough administered the intramuscular injection.

Appellant claims that the second paragraph of standard AMI 1501 contains an error as a matter of law requiring reversal. She claims that the emphasized portion gutted her case in that it obligated the jury, as a matter of law, not to consider her testimony with reference to her exhibit 6 as to the location where the shot had been administered. Appellant submits

that, having felt the cold alcohol swab and the needle stick, she could offer testimony as to where she received this injection. In other words, appellant argues that this issue did not require expert testimony, and the trial court's decision to give AMI 1501 amounted to directing a verdict in Nurse McCullough's favor on this crucial credibility question.

We disagree and hold that the trial court did not err in giving AMI 1501 because it accurately states the law and must be given in medical-malpractice cases such as this one. A trial court is required to give AMI 1501 in its entirety when plaintiffs contend medical-care providers acted negligently in treating their patients, s*ee Chrestman v. Kendall*, 247 Ark. 802, 448 S.W.2d 22 (1969), and failure to do so would have been reversible error, *see id. See also* Ark. Code Ann. § 16-114-206(a) (Repl. 2016); s*ee Nelson*, *supra*.

While Arkansas law does recognize that in some limited situations, a medical-negligence issue can fall within the common knowledge of jurors, such as when a physician fails to sterilize instruments or leaves a sponge in a surgery site, most medical-negligence cases involve matters that do not fall within a juror's common knowledge. *See Mitchell v. Lincoln*, 366 Ark. 592, 237 S.W.3d 455 (2006). Here, both parties recognized that the medical care surrounding the injection and alleged resulting injuries involved complex medical issues outside the jury's common knowledge, such that expert testimony was necessary and presented by both parties to explain the medical issues to the jury as evidenced by the requested use of AMI 1501 or a modified version of it by both parties.

The notes on use for AMI 1501 specifically provide that the trial court must give the second paragraph of the instruction at issue *unless* the trial court determines expert testimony is not necessary because the case falls within the common-knowledge exception. AMI Civ.

1501, notes on use (Thomson Reuters 2015). Here, the trial court made no such determination, and despite appellant's argument on appeal that this case did not require expert testimony, the record reflects that she never asked for such a finding. To the contrary, appellant offered her own expert testimony and proffered a modified version of AMI 1501. Both parties relied on expert testimony to explain the medical issues to the jury; accordingly, the trial court was required to give AMI 1501, including the second paragraph at issue in this appeal, in its entirety. *See Chrestman, supra.*

Moreover, the last paragraph of AMI 1501 does just the opposite of instructing the jurors not to consider a plaintiff's testimony, instead instructing the jury that "[i]n considering the evidence on any other issue in this case . . . [they] have a right to consider all the evidence in light of [their] own observations and experiences . . . ." AMI 1501. Despite appellant's reliance on *Duke, supra*, we hold that *Duke* actually supports the trial court's decision. The standard version of AMI 1501 that the trial court gave in this case complies with our supreme court's holding in *Duke* regarding the inclusion of a modification that would have instructed the jurors that they could use their common knowledge and could consider all evidence in light of their own life experiences and observations. *Id.* Following *Duke*, AMI 1501 was specifically revised to reflect that modification, and this updated instruction was the one given to the jury in this case.

Finally, to the extent that appellant argues that a preferable modification to the standard AMI 1501 would have been a version that took out the entire second paragraph in

question and for the trial court to have given AMI 104[1] instead, specifically because the case falls within the common-knowledge exception, we note that appellant failed to make such a request of the trial court.

B.  Did Trial Court Err in Refusing to Give Modified AMI 1501 Proffered by Appellant?

Appellant's attorney proffered the following modified version of the second paragraph of AMI 1501 that was rejected by the trial court:

> Only the nurses that testified in this case may offer evidence as to the degree of care and skill required of Cindye McCullough with respect to the intramuscular injection she administered to Natasha Engleman. *Likewise, only the nurses who testified may offer an opinion on the ultimate question of whether Cindye McCullough was negligent.*

(Emphasis added.)

Appellant cites *Barnes v. Everett*, 351 Ark. 479, 95 S.W.3d 740 (2003), in which our supreme court held that when requested jury instructions do not conform to model jury instructions, they should be given only when the model instructions do not contain an essential instruction and do not accurately state the applicable law. The *Barnes* court specifically held that, as a rule, model jury instructions are to be used, and non model instructions should be used only when the model instruction cannot be modified. *Id.*

Appellant submits that pursuant to *Barnes* it is permissible, and even necessary, when the evidence requires, to modify standard AMI instructions to fit the facts of a case, again citing *Duke*. She argues that the location on her body where the injection was administered by Nurse McCullough constituted the essential evidence on the issue of liability. Appellant

---

[1]AMI 104 Jury—Personal Observations and Experiences states that "[i]n considering the evidence in this case you are not required to set aside your common knowledge, but you have a right to consider all the evidence in the light of your own observations and experiences in the affairs of life." AMI Civ. 104 (2o17).

testified that Nurse McCullough injected her in the gluteus maximus, and she explained and further indicated on an anatomical chart where she felt the alcohol swab and the injection. Appellant maintains that this was admissible evidence that was essential to her case and should have been considered by the jury, but the trial court rejected her proffered modified version of AMI 1501. Appellant argues that her proffered version was a correct statement of the law as related to the evidence in this case, and she submits that no party would have suffered prejudice had the trial court given this instruction as an alternative to standard AMI 1501.

We find no merit in appellant's argument and hold that the trial court did not abuse its discretion in refusing to give the modified version of AMI 1501 proffered by appellant because the modified instruction was not a correct statement of the law, and moreover, would not have been curative as to the perceived problem with the standard instruction given. As previously stated, a party is not entitled to an instruction when the requested instruction is not a correct statement of the law. *See Nelson, supra.* Further, when a party requests instructions that do not conform to the Arkansas Model Jury Instructions, the trial court should give them *only* if the court determines the standard AMI instructions fail to contain an essential instruction or fail to accurately provide the law applicable to the case. *Id.*

Here, even though the unmodified version of AMI 1501 accurately instructed on the relevant law, appellant requested the trial court to modify AMI 1501 by substituting the second paragraph of the model instruction as previously indicated. Appellant's proffered substitution, however, does not accurately state the law. While Arkansas law does allow

opinion testimony to "touch upon" an ultimate issue, opinion testimony that instructs the jury what to do on an ultimate issue, such as expert testimony directly stating whether a defendant is negligent, is not permitted and may constitute reversible error. *See Gramling v. Jennings*, 274 Ark. 346, 625 S.W.2d 463 (1987).

In this case, appellant's proffered modification would have instructed the jury that "only the nurses who testified may offer an opinion on the ultimate question of whether Cindye McCullough was negligent." The proffered modification suggests that it would be permissible for an expert to directly testify on the ultimate question of whether Nurse McCullough was negligent. The *Gramling* opinion reiterates that Arkansas law is clear that such opinion testimony by an expert witness is not proper and constitutes reversible error. *Gramling, supra.* Appellant's brief provides no authority for her assertion that the modification is a correct statement of the law; accordingly, we hold that the trial court did not err in denying appellant's modified AMI 1501 instruction.

Affirmed.

GLOVER and HIXSON, JJ., agree.

*Parker Law Firm*, by: *Tim S. Parker*, for appellant.

*Malkmus Law Firm LLC*, by: *Brian D. Malkmus* and *Debra L. Gullett*, for appellees.